# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN PIZZI, JR., *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| THE ARTHUR JACKSON CO. et al., *Defendants* | : : | NO. 19-292 |

## MEMORANDUM

PRATTER, J.                                                                                                           NOVEMBER 25, 2019

John Pizzi, Jr., alleges that his employer, the Arthur Jackson Company, and two of his supervisors, Patricia Velez and Fred Ferguson, discriminated and retaliated against him over the course of several years because of his disabilities. Mr. Pizzi asserts claims for disability discrimination, retaliation, and aiding and abetting under the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("the Ordinance"). All three defendants move to dismiss Mr. Pizzi's complaint. Mr. Pizzi opposes the defense effort and, in the alternative, asks the Court for leave to amend his complaint. For the reasons below, the motion to dismiss is granted in part and denied in part, and the cross-motion for leave to amend is denied without prejudice because the proposed amended complaint would run afoul of aspects of the Court's ruling on the motion to dismiss. In the event Mr. Pizzi elects to try to amend the claims which can, pursuant to this ruling, go forward, he may seek leave to do but should seek that leave very promptly.

### BACKGROUND

Mr. Pizzi experienced a traumatic brain injury when he was approximately eight years old. *See* Second Am. Compl. ¶ 21 (Doc. No. 19). He suffers from a chronic seizure condition, epilepsy,

1

and persistent migraine headaches, as well as limited speaking, reading, and writing capabilities stemming from his childhood accident. *Id.* at ¶¶ 21–23.

Mr. Pizzi started working for the Arthur Jackson Company in 2010. *Id.* at ¶ 18. As of September 2015, he most recently held the position of Class II Cleaner at the Shops at Liberty Place. *Id.* at ¶¶ 11, 19. Ms. Velez and Mr. Ferguson also worked at the Shops at Liberty Place and held direct supervisory authority over Mr. Pizzi. *Id.* at ¶¶ 12–17.

Mr. Pizzi alleges that, from the time he began his employment with the Arthur Jackson Company, he was subjected to pervasive discrimination and retaliation due to his disabilities. Mr. Pizzi claims that the defendants perpetrated the following 16 discriminatory and retaliatory actions against him:

1. Ms. Velez called Mr. Pizzi offensive names on a daily basis and regularly made derogatory comments about his disabilities in front of other employees;

2. In February 2015, Ms. Velez accused Mr. Pizzi of lying and required him to provide documentation proving he had missed work for his mother's funeral;

3. On March 17, 2015, Ms. Velez threatened to suspend Mr. Pizzi after he reported her conduct to his union;

4. On April 10, 2016, Ms. Velez issued Mr. Pizzi a disciplinary write-up for failing to complete his work the previous day, even though the only proof was a note to Ms. Velez from a co-worker who had previously alleged that Mr. Pizzi's disabilities were fake;

5. Mr. Ferguson threatened Mr. Pizzi with physical violence on multiple occasions;[1]

6. On October 25, 2016, Ms. Velez made fun of Mr. Pizzi's disabilities in front of his co-workers when he refused to sign a disciplinary write-up with which he disagreed;

7. In early 2017, the Arthur Jackson Company offered to transfer Mr. Pizzi to a different work site, but the transfer would have caused him to lose union seniority status;

---

[1] Mr. Ferguson's threats allegedly occurred on April 22, 2016; May 26, 2017; and June 6, 2017. *See* Second Am. Compl. ¶¶ 32, 53–54 (Doc. No. 19). Mr. Pizzi claims that April 22, 2016 was not the first time Mr. Ferguson threatened him and made him feel unsafe, but he does not include dates or details for any prior instances. *Id.* at ¶ 32.

2

8. On February 20, 2017, Ms. Velez wrongfully terminated Mr. Pizzi for sleeping during work hours after Mr. Pizzi suffered an epileptic episode at work;[2]

9. On May 16, 2017, Ms. Velez verbally disciplined Mr. Pizzi after Mr. Ferguson lied to Ms. Velez about how much work Mr. Pizzi was supposed to have completed;

10. On June 19, 2017, Mr. Ferguson took a picture of Mr. Pizzi without his consent;

11. On June 19, 2017, Mr. Pizzi learned that Ms. Velez and Mr. Ferguson had instructed Mr. Pizzi's co-workers not to speak to him;

12. On July 7, 2017, Ms. Velez gave Mr. Pizzi a verbal warning for an unexcused absence when he had in fact been absent due to medical treatment related to a car accident, for which Mr. Pizzi provided documentation;

13. On August 21, 2017, Mr. Ferguson locked Mr. Pizzi's work cart in a closet and laughed;

14. On December 4, 2017, Mr. Ferguson denied Mr. Pizzi's request for help with his regular work assignment, after which Mr. Pizzi severely injured himself lifting portions of a stage;[3]

15. On December 5, 2017, Mr. Pizzi received a write-up for not completing the previous night's assignment even though he did not complete it due to his injury; and

16. "Most recently," the defendants caused Mr. Pizzi to temporarily and prematurely lose his medical benefits when they refused to send appropriate documents to Mr. Pizzi's union.

*Id.* at ¶¶ 25, 27–28, 30–32, 35, 40–45, 48, 51, 56–61.

Mr. Pizzi filed a charge of discrimination with the EEOC, the Pennsylvania Human Relations Commission, and the Philadelphia Commission on Human Relations for claims of discrimination under the ADA on May 17, 2018. *Id.* at ¶ 4. The EEOC issued Mr. Pizzi a right to sue notice on November 9, 2018. *Id.* at ¶ 5. Mr. Pizzi filed his original complaint in this action on January 22, 2019. *See* Compl. (Doc. No. 1). The current complaint at issue—his second amended complaint—asserts eight causes of action under the ADA, PHRA, and the Ordinance for

---

[2] Mr. Pizzi was reinstated in May 2017 following a grievance process and arbitration.

[3] Mr. Pizzi claims that this injury has caused him to be out of work and receiving workers' compensation since December 2017, and he may never recover.

3

disability discrimination, retaliation, and aiding and abetting. *See generally* Second Am. Compl. (Doc. No. 19). All defendants now move to dismiss Mr. Pizzi's second amended complaint (hereinafter "complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). Mr. Pizzi opposes that effort and, in the alternative, seeks to file a third amended complaint.

## LEGAL STANDARD

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000) (citations and internal quotation marks omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)

4

(explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (citations omitted).

## DISCUSSION

In their motion to dismiss, the defendants argue that (1) any discriminatory or retaliatory acts that allegedly occurred prior to the 300-day EEOC filing deadline are not actionable as a matter of law; (2) Mr. Pizzi has failed to plead that he is a qualified individual; (3) Mr. Pizzi did not suffer an actionable adverse employment action because of his disability; (4) Mr. Pizzi's Title I claims against Ms. Velez and Mr. Ferguson must be dismissed because there is no individual liability under Title I of the ADA; and (5) Mr. Pizzi's aiding and abetting claims fail because there is no underlying discrimination or retaliation to aid and abet.

For the reasons below, the Court reaches the following conclusions on each argument. First, most of Mr. Pizzi's claims are time-barred, as will be explained below. Second, Mr. Pizzi has sufficiently pleaded he is a qualified individual. Third, Mr. Pizzi has not pleaded an actionable adverse employment action for the purposes of his disability discrimination claims. Fourth, there is no individual liability under Title I of the ADA. Fifth, Mr. Pizzi has alleged an underlying act of retaliation, permitting his aiding and abetting claims to survive. How these conclusions affect Mr. Pizzi's claims are discussed below.

### I. Whether a Portion of Mr. Pizzi's Claims are Time-Barred

"Under the ADA, a plaintiff must file a claim with the EEOC within 300 days of the action complained of in order not to be time-barred on that claim." *Mercer v. SEPTA*, 608 F. App'x 60, 63 (3d Cir. 2015) (citing 42 U.S.C. § 2000e–5(e)(1)). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed

5

charges." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*

The so-called "continuing violations doctrine" permits "discriminatory acts that are not individually actionable" to "be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006)).

All but five of the alleged discriminatory and retaliatory acts recited in Mr. Pizzi's complaint took place prior to July 21, 2017—300 days prior to his May 17, 2018 EEOC filing.[4] The defendants argue that these acts are time-barred as discrete acts and not actionable as a matter of law. Mr. Pizzi contends that they are nonetheless timely because they show a continuing pattern of discrimination and should be considered under the continuing violations doctrine.

"The continuing violations doctrine is most often applied to hostile work environment claims, where not every act or remark itself is actionable but the series of actions gives rise to a claim based on the aggregate wrongs." *Patterson v. Strippoli*, 639 F. App'x 137, 141 (3d Cir.

---

[4] These five acts are:
1. Ms. Velez calling Mr. Pizzi offensive names on a daily basis and regularly making derogatory comments about his disabilities in front of other employees, which the Court liberally construes to allege that such conduct continued throughout Mr. Pizzi's employment;
2. Mr. Ferguson locking Mr. Pizzi's work cart in a closet on August 21, 2017 and laughing about it;
3. Mr. Ferguson denying Mr. Pizzi's request for help with his regular work assignment on December 4, 2017, after which Mr. Pizzi severely injured himself lifting portions of a stage;
4. Mr. Pizzi receiving a write-up on December 5, 2017 for not completing the previous night's assignment even though he did not complete it due to his injury; and
5. The defendants causing Mr. Pizzi to temporarily and prematurely lose his medical benefits when they refused to send appropriate documents to Mr. Pizzi's union.

6

2016); *see also Morgan*, 536 U.S. at 116 ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."). Mr. Pizzi has not at this time brought a hostile work environment claim.[5]

Mr. Pizzi's failure to bring a hostile work environment claim is not automatically fatal. *See Washington-Morris v. Bucks Cty. Transp., Inc.*, No. CV 17-3631, 2018 WL 2021081, at *6 (E.D. Pa. May 1, 2018) ("While there does not appear to be an absolute bar to using the continuing violation doctrine in discrimination cases, to do so, a plaintiff needs to demonstrate that the acts are part of the same unlawful employment practice rather than a series of separate, discriminatory events."). The dispositive question becomes whether Mr. Pizzi has pleaded discrete acts or acts that are part of the same unlawful employment practice.[6]

The Third Circuit Court of Appeals in *O'Connor v. City of Newark* provided a non-exhaustive list of acts that explicitly fall into the category of "discrete acts" that would make plaintiff's invocation of the continuing violation doctrine difficult: "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful accusation." 440 F.3d at 127. Applying that guidance to the defendants' acts here that allegedly occurred prior to July 21, 2017, the following constitute discrete acts that are not subject to the continuing violations doctrine:

---

[5] The phrase "hostile work environment" does appear once in Mr. Pizzi's complaint. *See* Second Am. Compl. ¶ 38 (Doc. No. 19) ("On or around January 16, 2017, Plaintiff sent another letter to ARTHUR JACKSON, again requesting a transfer to a different work site in order to avoid the hostile work environment he was being subjected to."). However, Mr. Pizzi did not state a hostile work environment cause of action in the suit papers. The significance of Mr. Pizzi's failure to bring a separate hostile work environment claim is highlighted by its newfound inclusion in his draft third amended complaint, which he has requested to file should the Court grant the motion to dismiss. *See* Pl.'s Cross-Mot. to Am. (Doc. No. 26); Pl.'s Draft Third Am. Compl. (Doc. No. 26-1).

[6] In looking for an unlawful employment practice, the Court will not consider the option of a hostile work environment because Mr. Pizzi failed to bring a claim for one.

7

- Ms. Velez accusing Mr. Pizzi of lying and requiring him to provide documentation proving he had missed work for his mother's funeral;

- Ms. Velez threatening to suspend Mr. Pizzi after he reported her conduct to his union;

- Ms. Velez issuing Mr. Pizzi a disciplinary write-up for failing to complete his work the previous day, even though the only proof was a note to Ms. Velez from a co-worker who had previously alleged that Mr. Pizzi's disabilities were fake;

- The Arthur Jackson Company offering to transfer him to a different work site when the transfer would have caused him to lose union seniority status;

- Ms. Velez wrongfully terminating Mr. Pizzi for sleeping during work hours after Mr. Pizzi suffered an epileptic episode at work;

- Ms. Velez verbally disciplining Mr. Pizzi after Mr. Ferguson lied to Ms. Velez about how much work Mr. Pizzi was supposed to have completed;

- Mr. Ferguson taking a picture of Mr. Pizzi without his consent;

- Ms. Velez and Mr. Ferguson instructing Mr. Pizzi's co-workers not to speak to him;

- Ms. Velez giving Mr. Pizzi a verbal warning for an unexcused absence when he had in fact been absent due to medical treatment related to a car accident, for which Mr. Pizzi provided documentation; and

- Mr. Ferguson locking Mr. Pizzi's work cart in a closet and laughing.

This leaves Mr. Pizzi with two alleged acts predating July 21, 2017 that are not immediately time-barred as discrete acts: (1) Mr. Ferguson threatening him with physical violence on multiple occasions, and (2) Ms. Velez making fun of Mr. Pizzi's disabilities in front of his co-workers when he refused to sign a disciplinary write-up with which he disagreed.[7] The Court will consider these acts timely for the purposes of the remaining analyses. All other acts predating July 21, 2017, however, are time-barred.

---

[7] The write-up constitutes a discrete act. However, the Court will liberally construe Mr. Pizzi's complaint to allege that Ms. Velez making fun of his disability on this occasion was part of the continued practice of embarrassing Mr. Pizzi.

8

## II. Disability Discrimination

"To establish a prima facie case of disparate treatment under the ADA, a plaintiff must show '(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination.'" *Mercer*, 608 F. App'x at 64 (quoting *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000)). Although a complaint of discrimination "need not establish a *prima facie* case in order to survive a motion to dismiss," *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016), it must plead "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements," *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "For purposes of assessing claims such as the ones presented herein, Title VII, the PHRA, and the [Ordinance] have been interpreted in a similar fashion." *Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 668 (E.D. Pa. 2016) (citations omitted).

### *A. Whether Mr. Pizzi is a Qualified Individual*

The defendants claim that Mr. Pizzi has failed to sufficiently plead the second element of a prima facie case—being able to perform the essential functions of the job—because Mr. Pizzi has admitted in his own pleadings that he is currently out of work due to his workplace injury and may never fully recover. However, "[t]he determination of whether an individual with a disability is qualified is made at the time of the employment decision, and not at the time of the lawsuit." *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (citing *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). The fact that Mr. Pizzi could not at present perform the essential functions of the job due to his injury is irrelevant.

The defendants also argue that Mr. Pizzi did not state anywhere in his complaint that he could perform the essential functions of the job, even with an accommodation. Although Mr. Pizzi failed to explicitly state using "magic words" that he was a qualified individual who could perform the essential functions of the job, Mr. Pizzi has pleaded that he maintained years of employment with the Arthur Jackson Company and completed his assignments, except when he was injured on the job. Although his complaint lacks an explicit statement that he was able to perform the essential functions of a Class II Cleaner, it contains enough facts to support the reasonable expectation that discovery will reveal evidence of his ability to do so. The Court finds that Mr. Pizzi has sufficiently pleaded that he is a qualified individual.

### B. *Whether Mr. Pizzi Suffered an Actionable Adverse Employment Action*

The defendants next argue that Mr. Pizzi's claims should be dismissed because the timely discriminatory acts he alleges do not constitute adverse employment actions. *See Mercer*, 608 F. App'x at 64 (requiring a plaintiff to show "he has suffered an otherwise adverse employment decision as a result of discrimination" to establish a *prima facie* case) (quoting *Shaner*, 204 F.3d at 500).

"To qualify as an adverse employment action in the discrimination context, an action must create 'a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a significant change in benefits.'" *Oguejiofo v. Bank of Tokyo Mitsubishi UFJ Ltd.*, 704 F. App'x 164, 168 (3d Cir. 2017) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Mr. Pizzi's timely alleged discriminatory acts are: (1) Ms. Velez calling Mr. Pizzi offensive names on a daily basis

10

and regularly making derogatory comments about his disabilities in front of other employees;[8] (2) Mr. Ferguson threatening Mr. Pizzi with physical violence on multiple occasions; (3) Mr. Ferguson locking Mr. Pizzi's work cart in a closet and laughing about it; (4) Mr. Ferguson denying Mr. Pizzi's request for help with his regular work assignment, after which Mr. Pizzi severely injured himself lifting portions of a stage; (5) Mr. Pizzi receiving a write-up for not completing the previous night's assignment even though he did not complete it due to his injury; and (6) the defendants causing Mr. Pizzi to temporarily and prematurely lose his medical benefits when they refused to send appropriate documents to Mr. Pizzi's union. For Mr. Pizzi's discrimination claim to survive, at least one of these must constitute an adverse employment action. The Court considers each in turn.

First, Ms. Velez calling Mr. Pizzi offensive names on a daily basis and regularly making derogatory comments about his disabilities in front of other employees did not change Mr. Pizzi's employment status and cannot be an adverse employment action.

Second, Mr. Ferguson threatening Mr. Pizzi with physical violence on multiple occasions did not change Mr. Pizzi's employment status and cannot be an adverse employment action.

Third, Mr. Ferguson locking Mr. Pizzi's work cart in a closet and laughing about it did not change Mr. Pizzi's employment status and cannot be an adverse employment action.

Fourth, Mr. Ferguson denying Mr. Pizzi's request for help with his regular work assignment is likewise not an adverse employment action. Mr. Pizzi claims Mr. Ferguson's refusal was part of the defendants' practice of "discrimination by isolation." Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss 5–6 (Doc. No. 22). Allegedly, because Mr. Ferguson refused to provide Mr. Pizzi

---

[8] The Court considers as part of this allegation Mr. Pizzi's assertion that Ms. Velez made fun of his disability in front of his co-workers when he refused to sign a disciplinary write-up with which he disagreed.

11

with assistance, Mr. Pizzi was understaffed and injured himself lifting pieces of a stage alone. *See* Second Am. Compl. ¶ 59 (Doc. No. 19). This injury has caused Mr. Pizzi to be out of work and receiving workers' compensation, and he may never recover. *Id.* at ¶ 60.

However, a claim of disability discrimination requires "a causal connection" between the plaintiff's disability and the alleged adverse employment action. *Neustein v. PNC Bank, NA*, No. CV 2:15-1045, 2017 WL 3173956, at *9 (W.D. Pa. July 26, 2017). "Proximate cause 'requires some direct relation between the injury asserted and the injurious conduct alleged and excludes links that are remote, purely contingent, or indirect.'" *Id.* (quoting *Jones v. S.E. Pa. Transp. Auth.*, 796 F.3d 323, 330 (3d Cir. 2015)).

Mr. Pizzi has failed to establish proximate cause because he does not tie Mr. Ferguson's denial to his injury or resulting change in employment status. First, Mr. Pizzi claims he was asked to help set up a stage for a holiday display, and he completed the staging. *See* Second Am. Compl. ¶ 59 (Doc. No. 19). Then, "*[a]fter the staging was complete*, [Mr. Pizzi] asked for help with his regular work assignment." *Id.* (emphasis added). Mr. Ferguson refused, after which Mr. Pizzi was allegedly injured because he did not have enough help to lift portions of the stage. *Id.* According to the plain language of Mr. Pizzi's pleading, Mr. Pizzi's "regular work assignment" and the staging assignment were two different tasks. Mr. Pizzi allegedly asked for help with the former, and then injured himself completing the latter (which, according to Mr. Pizzi's complaint, was also somehow already complete). There is no logical sequence of events pleaded that can lead the Court to conclude that Mr. Ferguson denying Mr. Pizzi help caused Mr. Pizzi to injure himself or, as a result, be unable to work; rather, to conclude so would be an unreasonable and unwarranted inference from Mr. Pizzi's own version of the facts. Mr. Pizzi has again failed to plead an adverse employment action.

Fifth, Mr. Pizzi receiving a write-up for not completing the staging assignment did not change Mr. Pizzi's employment status and cannot be an adverse employment action.

Sixth, the defendants causing Mr. Pizzi to temporarily and prematurely lose his medical benefits when they refused to send appropriate documents to Mr. Pizzi's union is also not an adverse employment action. Although "a decision causing a significant change in benefits" can constitute an adverse employment action, the complaint asserts that the defendants caused Mr. Pizzi to "*temporarily* lose his medical benefits prematurely." Second Am. Compl. ¶ 61 (Doc. No. 19) (emphasis added). Taken as true, this allegation does not establish a significant change in benefits because the reasonable inference flowing from a temporary loss in benefits is that the benefits were reinstated. Mr. Pizzi's complaint contains no allegations as to how long he suffered this loss of benefits or how such a loss was a significant change. Therefore, Mr. Pizzi has failed to plead an adverse employment action.

A complaint need not establish a *prima facie* case of discrimination, but it must state enough facts that the Court can reasonably expect discovery to reveal evidence of the necessary elements. Here, Mr. Pizzi has failed to state facts related to his timely alleged discriminatory acts that raise a reasonable expectation that discovery will reveal evidence of an adverse employment action. Without an adverse employment action, Mr. Pizzi's disability discrimination claims against all defendants fail. Accordingly, the Court dismisses his claims of disability discrimination against all defendants without prejudice.

## III. Retaliation

"To establish a *prima facie* case of retaliation under the anti-discrimination statutes, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection

13

between the employee's protected activity and the employer's adverse action." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002) (citation and quotations omitted). A plaintiff need not demonstrate that they were subjected to an adverse employment action; rather, a plaintiff "must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66 (2006)).

As discussed, the only discriminatory acts Mr. Pizzi alleges that are not time-barred are: (1) Ms. Velez calling Mr. Pizzi offensive names on a daily basis and regularly making derogatory comments about his disabilities in front of other employees; (2) Mr. Ferguson threatening Mr. Pizzi with physical violence on multiple occasions; (3) Mr. Ferguson locking Mr. Pizzi's work cart in a closet and laughing about it; (4) Mr. Ferguson denying Mr. Pizzi's request for help with his regular work assignment, after which Mr. Pizzi severely injured himself lifting portions of a stage; (5) Mr. Pizzi receiving a write-up for not completing the previous night's assignment even though he did not complete it due to his injury; and (6) the defendants causing Mr. Pizzi to temporarily and prematurely lose his medical benefits when they refused to send appropriate documents to Mr. Pizzi's union.

For all but the first of these alleged discriminatory acts, Mr. Pizzi's complaint does not allege that they were done in retaliation for Mr. Pizzi engaging in a protected activity. Without a causal connection between these acts and any protected activity, the Court must find that Mr. Pizzi has failed to plead them as retaliatory acts.

However, as to Ms. Velez's alleged name calling and derogatory comments, Mr. Pizzi asserts the following:

> At all times material, starting from the beginning of Plaintiff's employment with Defendants, Defendant VELEZ regularly and frequently harassed Plaintiff about his disabilities. By means of example only, VELEZ would call Plaintiff "stupid" and "retarded" on a daily basis and would make fun of Plaintiff's disabilities in front of other employees. . . . At all times material, Plaintiff would respond to VELEZ that he felt her comments to be inappropriate and hurtful, but VELEZ did not stop her harassing conduct. . . . At all times material, VELEZ would also retaliate against Plaintiff for opposing her harassing conduct . . . At all times material, Plaintiff continued to oppose VELEZ's discriminatory remarks and harassment, but VELEZ persisted in her discriminatory behavior.

Second Am. Compl. ¶¶ 25–27, 29 (Doc. No. 19). Based on these allegations, the Court must accept as true that Ms. Velez—Mr. Pizzi's supervisor—would call Mr. Pizzi offensive and derogatory names based on his disabilities, Mr. Pizzi would then report back to Ms. Velez that he found the remarks inappropriate, and Ms. Velez would retaliate by continuing to call Mr. Pizzi the same offensive names. The Court finds that this type of continuous offensive verbal injury could dissuade a reasonable worker from making a charge of discrimination. Therefore, Mr. Pizzi has stated enough facts for his claim of retaliation to survive. However, he has only stated facts sufficient to find Ms. Velez, and, accordingly, the Arthur Jackson Company, engaged in retaliatory conduct; Mr. Pizzi's claims of retaliation against Mr. Ferguson are dismissed without prejudice.

## IV. Individual Liability Under Title I of the ADA

Counts I and II of Mr. Pizzi's complaint assert causes of action under Title I of the ADA for unlawful discriminatory and retaliatory practices against all defendants. Individual liability is not cognizable under Title I of the ADA. Therefore, Mr. Pizzi's Title I claims against Ms. Velez and Mr. Ferguson are dismissed with prejudice. *See Koslow v. Commonwealth of Pa.*, 302 F.3d 161, 178 (3d Cir. 2002) ("[T]here appears to be no individual liability for damages under Title I of the ADA"); *Hamilton v. Genesis Healthcare Corp.*, No. CV 17-4777, 2018 WL 741724, at *4 (E.D. Pa. Feb. 7, 2018) (Pratter, J.) ("[C]ourts within the Third Circuit Court of Appeals have concluded that there is also no individual liability under Title I of the ADA. As a result, the

individually-named defendants cannot be held liable for violations of Title VII or the ADA. Hence, the Court grants their motion to dismiss.") (citations omitted), *appeal dismissed*, No. CV 18-1300, 2018 WL 3868742 (3d Cir. May 17, 2018).

## V.   Whether Mr. Pizzi's PHRA and Ordinance Aiding and Abetting Claims Survive

The defendants also argue that Mr. Pizzi's aiding and abetting claims under the PHRA and the Ordinance must be dismissed because there are no viable underlying claims of discrimination or retaliation to aid and abet. *See, e.g., West v. Dan Lepore & Sons Co.*, No. CV 17-1592, 2019 WL 1227716, at *10 (E.D. Pa. Mar. 14, 2019) ("For liability to be imposed on an aiding and abetting theory there must be a cognizable predicate offense, i.e. a violation of the PHRA's primary anti-discrimination provision.") (quoting *Lombard v. Lassip, Inc.*, No. CV 17-964, 2017 WL 6367956, at *5 (E.D. Pa. Dec. 13, 2017)). However, Mr. Pizzi's claim of retaliation has survived.

Under both laws, "[l]iability will be imposed for a supervisor's own discriminatory conduct or their failure to take action against discrimination experienced by the employee." *Ahern*, 183 F. Supp. 3d at 671 (citing *D'Altilio v. Dover Twp.*, No. CV 06–1931, 2009 WL 2948524, at *12–13 (M.D. Pa. Sep. 14, 2009)). The Court has found that Mr. Pizzi's complaint includes just enough facts to find that Ms. Velez engaged in retaliatory conduct. As noted, however, Mr. Pizzi has not stated enough facts to find the same as to Mr. Ferguson. Therefore, Mr. Pizzi's aiding and abetting claims survive as to Ms. Velez and are dismissed without prejudice as to Mr. Ferguson. *See West*, 2019 WL 1227716, at *10, *12 (finding that a potential violation of the PHRA's anti-retaliation provision could lead to aiding and abetting liability under the PHRA and the Ordinance).

## VI.   Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) instructs that a court should grant leave to amend "when justice so requires." "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting FED. R. CIV. P. 15(a)(2)).

In the alternative to his sur-reply to the defendants' motion to dismiss, Mr. Pizzi requests yet again leave to amend his complaint. *See* Pl.'s Cross-Mot. to Am. (Doc. No. 26). The defendants oppose this motion, citing undue delay, bad faith, repeated failure to cure deficiencies, and futility. *See* Defs.' Resp. to Pl.'s Cross-Mot. to Am. (Doc. No. 27).

The Court agrees with the defendants that Mr. Pizzi's timing is unfavorable. Mr. Pizzi has already amended his complaint twice, once as a matter of course and once with the leave of the Court. *See* Am. Compl. (Doc. No. 10); Second Am. Compl. (Doc. No. 19). Mr. Pizzi then waited until filing his sur-reply to the current motion to dismiss to request leave to file a third amended complaint. *See* Pl.'s Sur-Reply to Defs.' Mot. to Dismiss (Doc. No. 25); Pl.'s Cross-Mot. to Am. (Doc. No. 26). However, the Court does not find this series of events so egregious as to demonstrate undue delay or bad faith. *Contra Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 274 (3d Cir. 2001) (affirming district court's denial of plaintiffs' motion to file a second amended complaint after summary judgment was entered); *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (finding "unreasonable" delay where motion to amend came three years after the filing of the complaint and plaintiff had "numerous opportunities" to cure deficiencies earlier).

As to failure to cure deficiencies and futility, the Court notes that the parties' briefing on the motion to dismiss and Mr. Pizzi's proposed third amended complaint bring to light new claims of hostile work environment and failure to accommodate. Without commenting as to the strength of these claims, the Court finds that amendment is not blatantly futile and justice requires giving Mr. Pizzi the opportunity to apply his alleged facts to these new causes of action.

However, Mr. Pizzi's proposed third amended complaint contains claims the Court has dismissed with prejudice in this decision, namely Mr. Pizzi's Title I ADA claims against Ms. Velez and Mr. Ferguson. *See* Pl.'s Cross-mot. to Am. (Doc. No. 26); Pl.'s Draft Third Am. Compl. (Doc. No. 26-1). For this reason, the Court denies without prejudice Mr. Pizzi's cross-motion for leave to amend. Mr. Pizzi may, however, seek leave again with a newly drafted third amended complaint.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted in part and denied in part, and Mr. Pizzi's cross-motion for leave to amend is denied without prejudice. An appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE